**SIGNED THIS: August 1, 2022**

_____

**Mary P. Gorman**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No.    21-70349 |
| GARY LEE TAYLOR and LAURA ) | |
| ELAYNA TAYLOR, ) | Chapter 7 |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| ILLINOIS DEPARTMENT OF ) | |
| EMPLOYMENT SECURITY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No.    21-07019 |
| ) | |
| GARY LEE TAYLOR, ) | |
| ) | |
| Defendant. ) | |

## O P I N I O N

Before the Court, after trial, is a complaint filed by the Illinois Department

of Employment Security ("IDES") requesting that a debt owed to it by the Debtor

-1-

be excepted from his discharge. The complaint alleges that the Debtor obtained unemployment benefits through false pretenses and false representations. Because IDES met its burden of proof on all elements of the cause of action, the debt will be excepted from the Debtor's discharge.

## I. Factual and Procedural Background

Gary Lee Taylor ("Debtor"), with his wife, Laura Elayna Taylor, filed a voluntary petition for relief under Chapter 7 on April 30, 2021. On Schedule E/F: Creditors Who Have Unsecured Claims, the Debtor listed a debt in the amount of $29,076 due to IDES; he labeled the debt as disputed. IDES is a department within the Illinois State government that administers the State's unemployment insurance benefits, among other things.

IDES commenced this adversary proceeding on August 12, 2021, seeking to except the debt owed to it from the Debtor's discharge. In its complaint, IDES alleges that the Debtor obtained $31,660 in unemployment benefits through false pretenses and false representations. IDES asserts that the Debtor knowingly failed to report his on-going, full-time employment at the Illinois Education Association ("IEA") when he applied for and continued to receive unemployment benefits. The Debtor answered the complaint disputing that any overpayment of unemployment benefits was obtained by false representations.

A trial on the complaint was held May 26, 2022, by video conference. Abraham Elizondo testified for IDES, identifying himself as a Public Service Administrator, Manager of the Overpayment and Collection Recovery Unit for

IDES. In his position, Mr. Elizondo provides leadership and direction to a staff of investigators who pursue the collection of overpaid unemployment benefits. Although his unit does not make initial determinations of overpayments, he reviews claimants' files after they are denied benefits. He also refers cases for criminal and civil prosecutions and bankruptcy adversary complaints. Mr. Elizondo had access to the Debtor's overpayment file and reviewed it prior to testifying.

Mr. Elizondo said that the Debtor applied for and received regular unemployment benefits for the weeks ending April 4, 2020, through January 2, 2021. He explained that a claimant's weekly benefit amount is established using a claimant's base period—the first four of the last five completed quarters immediately preceding the date the claim was filed. Eligibility is based on four conditions: (1) the claimant is unemployed through no fault of his or her own, (2) the claimant was paid a minimum of $1600 or more during one of those first four quarters, (3) outside the highest paid quarter, the claimant earned a minimum of $440, and (4) the claimant is registered for work with IDES.[1] According to Mr. Elizondo, the Debtor qualified for a weekly benefit amount of $484—the maximum amount available—because he had high quarterly wages during the base period.

To receive unemployment insurance benefits, Mr. Elizondo explained that a claimant must apply online, verifying personal information and self-creating a

---

[1] The Debtor did not have to report any work searches while he was collecting unemployment benefits because IDES suspended the work search requirement during the COVID-19 pandemic.

username and password. He identified an exhibit consisting of three pages of screenshots of the Debtor's online unemployment claim. The claim listed the YMCA of Springfield, Illinois, as the Debtor's most recent employer; IEA was listed as a previous employer. The claim included information that the Debtor routinely worked five days a week at IEA from November 1, 1996, through March 9, 2020, but had been laid off due lack of work. He claimed to have earned $0 in wages since March 29, 2020. Based on this information, the Debtor was approved to receive unemployment benefits.

According to Mr. Elizondo, once approved for benefits, claimants must certify their claim either telephonically or online through the IDES website every two weeks. The purpose of certification is twofold: it is how claimants obtain ongoing benefit payments, and it is how IDES determines continuing eligibility. Mr. Elizondo said that certification is the only method that IDES has to obtain real-time information about continuing eligibility. It is the claimants' responsibility to let IDES know if they have returned to work and, if so, how much they have earned. IDES has various resources on its website to assist claimants in certifying their responses and to provide answers to frequently asked questions.

Mr. Elizondo said that the Debtor logged on to the IDES website and submitted certification responses for the weeks ending April 4, 2020, through January 30, 2021. The Debtor reported that he did not work or earn wages for the weeks ending April 4, 2020, through June 20, 2020. He reported working and earning wages between $0 and $150 for the weeks ending June 27, 2020,

-4-

through November 21, 2020. He reported neither working nor earnings wages for the weeks ending November 28, 2020, through January 2, 2021. He reported working and earning between $70 and $124 for the weeks ending January 9, 2021, through January 30, 2021. Mr. Elizondo said that if the Debtor had certified that he was working and earning wages greater than $484 in any week, he would have been disqualified from receiving unemployment benefits and his claim would have been terminated.

During his testimony, Mr. Elizondo identified a wage questionnaire that had been completed by IEA reporting that the Debtor had been full-time employed by it during the entire period he was receiving unemployment benefits. Mr. Elizondo said that it is customary for employer questionnaires to be sent to a claimant's employers when a claim for unemployment benefits is filed, and it is particularly common for a questionnaire to be sent during an investigation. IEA was sent the questionnaire after it provided information to IDES that the Debtor was still working and earning wages. IEA reported on the questionnaire that the Debtor had worked and earned wages for services performed after March 14, 2020. Attached to the questionnaire was a list of the Debtor's gross wages from March 15, 2020, through February 19, 2021, which identified his weekly gross wages for the period as $1071.

Mr. Elizondo said IDES was prompted to perform an audit of the Debtor's claim because IEA reported that the Debtor was employed and receiving wages. The Debtor was under review for the weeks ending April 4, 2020, through January 2, 2021. A Notice of Audit is mailed to claimants to notify them that

they are under audit for a specific period. The notice includes overpayment
details and gives claimants an opportunity to respond before a determination is
made. Claimants are invited to submit to a fact-finding interview with an
investigator or to otherwise respond in writing. And if the overpayment details
are disputed, claimants are instructed to provide information or documentation
to support their position. The Debtor did not respond to the Notice of Audit that
was sent to him.[2] As a result of its audit, IDES found that the Debtor was not
eligible for unemployment benefits, and his benefits were disallowed. Mr.
Elizondo identified the list of overpayment details attached to the Notice of Audit
sent to the Debtor as providing a calculation of the benefits the Debtor received
from April 4, 2020, through January 2, 2021. The calculation showed that the
amount of benefits overpaid to the Debtor totaled $31,660.[3]

After an audit determination of an overpayment, Mr. Elizondo explained,
IDES next attempts to determine whether fraud occurred. IDES determines that
fraud occurs any time claimants collect unemployment while simultaneously
working. A Notice of Fraud Decision is mailed to claimants to notify them, among
other things, that there was an overpayment of benefits for which they were not
eligible to receive and that they have the right to file an appeal within thirty days
of the date the notice was mailed. The Notice of Fraud Decision that was sent to
the Debtor informed him of IDES's determination that he had committed fraud

---

[2] The Debtor had filed bankruptcy by the time the Notice of Audit was sent on July 7, 2021.
[3] Although Mr. Elizondo testified earlier that the Debtor had established eligibility for the maximum benefit of $484 per week, the Debtor received $1084 or $784 in many weeks due to the enhanced benefits available throughout the pandemic.

for the weeks ending April 4, 2020, through January 2, 2021, in the amount of $31,660. The Debtor did not respond to the Notice of Fraud Decision and did not contact IDES to appeal.[4]

On cross-examination, Mr. Elizondo denied that the screenshots he identified as the Debtor's claim could have been altered after filing. He said that the screens are archived and that there is no paper application form to be altered. He admitted that an individual other than the named claimant could file a fraudulent claim if the claimant either provided someone else with their username and password or if the filer had all of the claimant's personal information.[5] Mr. Elizondo acknowledged that the two arrows affixed to the screen shots pointing out specific information had been placed by him on the documents simply to assist in the review of the documents for this case.

Mr. Elizondo also conceded during his cross-examination that a hearing was not conducted prior to the issuance of the Notice of Fraud Decision. He explained that fraud determinations are made based on available information such as a claimant's lack of response and the wage records provided by an employer. It is customary for such decisions to be entered even when a claimant has filed for bankruptcy because bankruptcy notices and overpayment

---

[4] The Debtor had filed bankruptcy by the time the Notice of Fraud Decision was sent on July 21, 2021.

[5] The Debtor's attorney objected to Mr. Elizondo testifying about the Debtor's claim from the screenshots. She also objected to the introduction of electronic records, but the objections were overruled based on the Court's finding that Mr. Elizondo's foundational testimony established that the entire application process was online and no paper files existed. The attorney also objected on the basis that the Debtor was going to testify that someone else filed his claim for him and therefore the information on the claim was hearsay. That objection was also overruled as the testimony had not yet been presented and the Debtor's direct involvement in the process would likely defeat a claim of hearsay. The overruling of the objections was without prejudice to cross-examination of the witness on the issues or the raising of the same objections when the exhibits were offered into evidence.

investigations are handled by two separate units: the overpayment and collection recovery unit reviews the former while the fraud investigation unit conducts the latter. Although Mr. Elizondo spoke with a member of the fraud investigation unit about the Debtor's case, he did not recall informing her of the Debtor's bankruptcy.

On re-direct, Mr. Elizondo reiterated that, when new claims are filed, unique usernames and passwords are created by claimants. Each claimant is also asked for significant identifying information such as their driver's license number. Security questions such as the claimant's mother's maiden name and their place of birth are also used to protect the accounts.

At the conclusion of Mr. Elizondo's testimony, IDES rested. IDES moved to admit the exhibits discussed by Mr. Elizondo, including the screenshots of the Debtor's online claim, the Debtor's bi-weekly certifications of his work and earnings from April 2020 through January 2021, IEA's response to the IDES questionnaire, IDES's Notice of Audit, and IDES's Notice of Fraud Decision. The Debtor's attorney renewed her objection to the admission of the screenshots of the claim application arguing that the exhibit was not a true copy of the claim and that there was a question as to where the information on the document came from. The document was admitted over objection because Mr. Elizondo provided sufficient foundation that the document was used in the course of business of IDES, that there was no paper copy to be produced because the document was created electronically, and that the document was the actual document submitted on behalf of the Debtor to begin receiving unemployment benefits. The

Debtor also objected to the admission of IEA's response to the questionnaire on hearsay grounds and argued that it did not appear to be complete because page one was missing. The Court admitted the document over objection, finding that the form was complete, that, based on the testimony of Mr. Elizondo, the missing page was a facsimile cover sheet, and that not including a cover sheet was akin to not including an envelope when admitting a letter into evidence. The questionnaire included information collected in the ordinary course of IDES's business. The Debtor also objected to the admission of both the Notice of Audit and the Notice of Fraud Decision based on relevance because Mr. Elizondo testified that they were created post-petition and were self-serving as to the conclusions presented within them. The Court admitted the documents over objection for the limited purpose of considering the accounting information attached to the documents. The Court agreed that the fraud determination would not be considered to determine whether the debt is nondischargeable, or in making ultimate findings of fact about the Debtor's conduct.[6] The Debtor's bi-weekly certifications were admitted without objection.

The Debtor testified on his own behalf. He has been employed by IEA for twenty-five years and has worked part-time at the YMCA for ten years. He said he had never applied for unemployment insurance benefits because he has

---

[6] Although IDES made reference to the Notice of Fraud Decision in its complaint, it makes no argument now that the decision has a collateral estoppel effect on the determination of the dischargeability of the debt owed to it. The decision was made unilaterally by IDES and not by a court of competent jurisdiction; it is not a final order or judgment on the merits of the issue. Accordingly, the principles of collateral estoppel would not apply. *See Gambino v. Koonce*, 757 F.3d 604, 608 (7th Cir. 2014). Further, the fraud determination was made after this case was filed and when the automatic stay was in effect. 11 U.S.C. §362(a). Actions taken in violation of the automatic stay are void. *Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.,* 250 F.3d 1077, 1082 (7th Cir. 2001).

always worked and was therefore not familiar with the process of applying for those benefits. He testified that, after he was laid off from the YMCA for lack of work in March 2020 due to COVID-19, the YMCA provided him with a form to apply for unemployment benefits. He claimed that he never filled out an electronic application to receive unemployment benefits. Instead, he filled out a paper form that included his employment history, where he listed both the YMCA and IEA as his employers; he delivered that form to the YMCA's human resources department staff. Approximately two weeks later, he received a letter from IDES informing him that he qualified for unemployment benefits.

According to the Debtor, he had never seen the screenshots of his claim application until the day before trial. He also said that he never reported that IEA was a previous employer rather than a current employer. The Debtor said that, when he filed his claim for unemployment, he thought he was applying for unemployment based only on his employment with and his layoff from the YMCA. He believed that was the case because, after the YMCA laid him off, he was told by YMCA staff to complete the form and apply for unemployment insurance benefits. He never spoke with IDES about the application; he only spoke with the YMCA's human resources department staff member who assisted him in filing his claim.

The Debtor confirmed that he personally logged onto IDES's website every other week to certify his eligibility and answer the questions that were asked of him. He answered these questions only as to his hours worked and wages earned from the YMCA. He did not include his work and wages from IEA; he said that it

"did not cross [his] mind" to include his earnings from IEA in his responses. He believed he was being honest in his reporting to IDES. The Debtor said he did not believe that staff at IEA was aware of his unemployment claim until it received the questionnaire from IDES.

Mr. Elizondo testified briefly as a rebuttal witness. He said that the Debtor had previously applied for and received unemployment benefits through IDES for a period between 2001 and 2003. He was unable to access the Debtor's claims but could tell that there had been an overpayment claim made against the Debtor that had been paid in full. He responded to questioning by the Debtor's attorney by stating that he knew the prior claim was made by the Debtor because he was able to match the Social Security numbers on the claims.

Both attorneys presented arguments at the close of evidence. The matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). The determination of the dischargeability of a particular debt is a core proceeding. 28 U.S.C. §157(b)(2)(I). This matter arises from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

### III. Legal Analysis

IDES alleges that the debt owed to it by the Debtor should be excepted

from his discharge because the debt was incurred through "false pretenses, a

false representation, or actual fraud[.]" 11 U.S.C. §523(a)(2)(A). A party seeking

to establish an exception to the discharge of a debt generally bears the burden

of proving each element of the claim by a preponderance of the evidence. *Grogan*

*v. Garner*, 498 U.S. 279, 286–87 (1991). Exceptions to discharge are construed

strictly against a creditor and liberally in favor of a debtor. *Ojeda v. Goldberg*,

599 F.3d 712, 718 (7th Cir. 2010); *Goldberg Sec., Inc. v. Scarlata (In re Scarlata)*,

979 F.2d 521, 524 (7th Cir. 1992).

IDES claims that the debt owed to it should be excepted from the Debtor's

discharge because the Debtor certified that he was unemployed and earning no

wages despite being full-time employed by IEA while he collected unemployment

benefits. To prevail, IDES first needed to establish that the Debtor owes a debt

to it. 11 U.S.C. §523(a); *Central Laborers' Pension Fund v. VanHuss (In re*

*VanHuss)*, 633 B.R. 830, 838–39 (Bankr. C.D. Ill. 2021). Next, IDES was required

to prove that (1) the Debtor made a false representation or omission of fact that

the Debtor either knew to be false or made with reckless disregard for its truth;

(2) the misrepresentation or omission was made with an intent to deceive; and

(3) IDES justifiably relied on the false representation or omission. 11 U.S.C.

§523(a)(2)(A); *Field v. Mans*, 516 U.S. 59, 74–75 (1995); *Ojeda*, 599 F.3d at 716-

17.

Mr. Elizondo identified a listing of the weekly unemployment benefit payments the Debtor received from April 2020 through the beginning of January 2021; the payments totaled $31,660. During each week in the period, the Debtor was full-time employed at IEA, earning over $1000 in weekly gross wages. Mr. Elizondo's testimony made out a prima facie case that the Debtor received $31,660 in benefit overpayments from IDES and therefore owes a refund of that amount to IDES. 820 ILCS 405/900 (requiring that claimants repay improperly paid unemployment benefits). The Debtor questioned the amount of IDES's overpayment calculation in his answer to the complaint, but his attorney did not question Mr. Elizondo about the calculations at trial. To the contrary, the Debtor admitted that he had received unemployment benefits despite being full-time employed. IDES met its initial burden to establish that a debt is owed to it by the Debtor.

Having established the existence of the debt, IDES was next required to prove that the Debtor made a false representation or an omission of fact that he either knew to be false or made with reckless disregard for its truth. There is no dispute that the information contained on the Debtor's online application for benefits representing that he had been laid off from IEA was false. He admitted that he continued to work for IEA throughout the period he was receiving benefits. There is also no dispute that each of the Debtor's bi-weekly certifications contained false representations. Each certification said that the Debtor was either not working at all or that he had worked during a particular week but only earned a small amount—never more than $150. He had, in fact,

worked every week during the certification period and had earned gross wages of over $1000 each week.

The Debtor did not dispute that he made the bi-weekly certifications himself. He admittedly logged into the IDES system himself and reported that he was not working or had made only minimal amounts when, in fact, he was working and earning more than $1000 per week. The Debtor tried to distance himself from the false information contained in his online application by claiming that YMCA staff submitted the application and that he had little to do with it. But he admitted that he provided the necessary information to the YMCA staff member that was entered into the IDES system, and, according to Mr. Elizondo, that information would have included personal, identifying information such as the Debtor's driver's license number and his mother's maiden name. He had to have been an active participant in the process in order to have provided all the information required to complete the forms and receive the benefits. That he may have had a scrivener's assistance in completing the online forms does not absolve the Debtor from responsibility for providing truthful information to IDES in making his claim.

It is also not disputed, at least at this time, that the Debtor knew that the information on the online application and bi-weekly certifications was false. He knew he was working and grossing over $1000 per week; he cannot and does not claim otherwise. His repeated incorrect reporting that he was not working or only earning minimal amounts were knowing false statements or knowing false omissions of material facts. *See Illinois v. Hatcher (In re Hatcher)*, 111 B.R. 696,

699-700 (Bankr. N.D. Ill. 1990) (failing to inform welfare agency of new employment and continuing to accept unemployment benefits was tantamount to intentional false representation); *Minn. Dep't of Emp't and Econ. Dev. v. Sanderson (In re Sanderson),* 509 B.R. 206, 210-11 (Bankr. W.D. Wis. 2014) (by continuing to certify unemployment and accept benefits payments despite no longer being eligible for benefits, the debtor made repeated intentional false statements) (citing *Ill. Dep't of Emp't Sec. v. Winston (In re Winston),* 114 B.R. 566, 570 (Bankr. N.D. Ill. 1990)). If a debtor makes a statement that he knows to be false or makes a statement with reckless disregard for the truth, that statement is considered to have been made with knowledge of its falsity. *Zamora v. Jacobs (In re Jacobs),* 448 B.R. 453, 474 (Bankr. N.D. Ill. 2011); *Stamford Mun. Emps.' Credit Union, Inc. v. Edwards (In re Edwards),* 67 B.R. 1008, 1010 (Bankr. D. Conn. 1986) (citing *Morimura, Aria & Co. v. Taback,* 279 U.S. 24, 33 (1929)). Reckless disregard—not caring whether a representation is true—is the equivalent of knowing a representation is false. *See Jacobs,* 448 B.R. at 474 (citing *Visotsky v. Woolley (In re Woolley),* 145 B.R. 830, 834 (Bankr. E.D. Va. 1991)). There is no question that the Debtor knew that he had not been laid off from his employment with IEA because he continued to work there. IDES met its burden of proving that the Debtor made a false misrepresentation or omission that he knew was false or that he made with reckless disregard for the truth.

Next, IDES needed to prove that the Debtor intended to deceive it when he applied for benefits and repeatedly made the false reports regarding his employment and wages. Proof of intent to deceive is based on a debtor's

subjective intent at the time the representation is made. *Handler v. Moore (In re Moore),* 620 B.R. 617, 630 (Bankr. N.D. Ill. 2020). An intent to deceive may be established through direct evidence or inference. *CFC Wireforms, Inc. v. Monroe (In re Monroe),* 304 B.R. 349, 356 (Bankr. N.D. Ill. 2004) (citing *In re Sheridan,* 57 F.3d 627, 633 (7th Cir. 1995)). "Where a debtor knowingly or recklessly makes false representations which the debtor knows or should know will induce another to act, an intent to deceive may be inferred." *Dancor Const., Inc. v. Haskell (In re Haskell),* 475 B.R. 911, 921 (Bankr. C.D. Ill. 2014) (Perkins, J.) (citing *Sheridan,* 57 F.3d at 633; *Bletnitsky v. Jairath (In re Jairath),* 259 B.R. 308, 315 (Bankr. N.D. Ill. 2001)). The cumulative effect of multiple misstatements or omissions made with reckless disregard for the truth may be sufficient to support a finding of fraudulent intent. *Cutcliff v. Reuter (In re Reuter),* 427 B.R. 727, 753 (Bankr. W.D. Mo. 2010) (citing *Youngblood v. Hembree (In re Hembree),* 186 B.R. 530, 532 (Bankr. M.D. Fla. 1995)). Knowledge and intent are often intertwined. An unemployment claimant's intent to deceive IDES may be inferred from repeated false certifications about employment and income. *See Hatcher,* 111 B.R. at 699-700; *Sanderson,* 509 B.R. at 210-11 (citing *Winston,* 114 B.R. at 570).

The bi-weekly certification question repeatedly answered by the Debtor was straightforward: "Did you work?" The Debtor was not asked if he worked at the YMCA or if he worked for the employer who had laid him off. The choices to answer the question were "Yes" or "No." The Debtor repeatedly chose "No" even though he was working full-time for IEA. An inference of intent to deceive or at least the reckless disregard for the truth to support a finding of intent to deceive

can be drawn from the Debtor's repeated false responses. He said that he thought he was just applying for benefits based on losing his part-time job at the YMCA and that it never crossed his mind to answer the questions so as to include information about his full-time employment with IEA. But the Debtor was just not credible on this issue. He knew he was representing to IDES that he was unemployed and entitled to benefits. He never explained how or why he thought he was entitled to benefits when he was working full-time. He blames YMCA staff for his misrepresentations to IDES, but he produced no witness from the YMCA to back him up or explain why his application stated that he had been laid off from IEA when he claimed that he never reported that information. If someone at the YMCA really did lead the Debtor astray, he should have produced that person as a witness at trial.

Additionally, the Debtor somewhat gratuitously claimed that he had no knowledge about unemployment claims because he had never filed a claim before. That testimony was undercut by Mr. Elizondo's testimony that the Debtor had filed for benefits with IDES several years prior. The Debtor did not rebut Mr. Elizondo's testimony in that regard. Although the Court draws no inferences from Mr. Elizondo's statements about the Debtor having a prior overpayment, the Court does find that the Debtor filed for unemployment benefits before and that his claimed lack of experience was therefore not true. The only reason for him to have affirmatively volunteered his lack of experience with unemployment benefits was to try to bolster his credibility. It did not work.

This Court must find that the Debtor intended to deceive IDES through his reckless disregard of his responsibility to answer his bi-weekly certifications correctly. He chose to answer questions incorrectly week after week and thereby collected over $30,000 to which he was not entitled. An inference of intent to deceive is properly drawn; IDES met its burden of proof on this issue.

The final element of required proof was that IDES justifiably relied on the Debtor's false representations. The standard for establishing justifiable reliance is less demanding than that of reasonable reliance. *Ojeda*, 599 F.3d at 717. Whether a creditor justifiably relied on a debtor's representation "is determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff." *Ojeda,* 599 F.3d at 717 (citing *Field*, 516 U.S. at 71–72). A creditor must show that the debtor made a material representation that was the cause-in-fact of the debt to be excepted from discharge. *Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 676 (7th Cir. 1995). The requirement of justifiable reliance does not impose an affirmative duty to investigate absent obvious red flags warranting further inquiry. *See Gasunas v. Yotis (In re Yotis),* 548 B.R. 485, 496 (Bankr. N.D. Ill. 2016) (citations omitted); *Haskell,* 475 B.R. at 922 (citations omitted); *Jacobs,* 448 B.R. at 472 (citations omitted).

Mr. Elizondo testified that the only way for IDES to determine whether claimants qualify for unemployment insurance benefits is through the claimants' certification responses and information received from their employers. He explained that the purpose behind claimants certifying their responses to questions asking whether they worked and earned wages is to monitor their

continued eligibility for unemployment benefits. It is the claimants' responsibility to inform IDES of their work circumstances so that IDES can continue to accurately assess whether they qualify for benefits. Mr. Elizondo made clear that IDES relies heavily on the accuracy of claimants' applications and certifications when determining benefit eligibility.

The Debtor did not seriously contest this issue. His attorney suggested in arguments that it took IDES a long time to find out that the Debtor was working. She had, however, also asked questions of Mr. Elizondo regarding how busy IDES was during the COVID-19 pandemic. The Court cannot find any lack of diligence on the part of IDES in sending out the questionnaire to IEA and determining that the Debtor was not eligible for benefits. In any event, the mere fact that IDES might have ascertained the falsity of the Debtor's representations sooner had it been more diligent in investigating the Debtor's claim did not create a duty for IDES to so investigate. IDES's reliance on the Debtor's certification responses was justifiable. IDES met its burden on this issue.

### IV. Conclusion

The Debtor made false representations to IDES when he reported that he was laid off by both the YMCA and IEA and when he repeatedly certified that he was earning minimal wages despite being full-time employed by IEA and earning substantial wages. He made the false representations with reckless disregard for the truth for the purpose of obtaining unemployment benefits. IDES justifiably relied on those false representations. For the foregoing reasons, the Court

concludes that IDES has met its burden of proof. The debt owed to IDES will be excepted from the Debtor's discharge.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###